Moloney Electric Company v. Commissioner.
Moloney Elec. Co. v. Commissioner
Docket No. 12917.
United States Tax Court
1947 Tax Ct. Memo LEXIS 3; 6 T.C.M. (CCH) 1347; T.C.M. (RIA) 47340; December 31, 1947
*3 C. J. Batter, Esq., 910 17th St., N. W., Washington, D.C., and James C. Thompson, C.P.A., Security Bldg., St. Louis, Mo., for the petitioner. Frank M. Cavanaugh, Esq., for the respondent. MURDOCK determined a deficiency in income tax of $62,073.13 for 1942 and one of $1,250 for 1944. He also denied claims for refund under section 711(b)(1)(J) for 1941 and 1942. The issues for decision are, (1) whether a deduction of $115,889.43 for 1937 should be disallowed under section 711(b)(1)(J)(i), and (2) whether the unused excess profits credit for the year 1943 to be carried back to the year 1941 is to be computed under the law in effect for 1943 or the law in effect for the year 1941. Findings of Fact The petitioner, a corporation, filed its tax returns and claims for refund for the periods here involved with the collector of internal revenue at St. Louis, Missouri. It kept its books and filed its returns on a calendar year basis using an accrual method of accounting. It has been engaged since 1928 in the business of manufacturing electric transformers and in selling those transformers to public utility and industrial users throughout the nation. They were generally *4 placed out-of-doors. Its transformers are installed in a metal case or container. The transformer was fastened to the bottom of the container generally used by the petitioner. The outside of that case had to have several sets of brackets to enable the customer to mount the transformer on a pole so that the leads coming out of the transformer would be at the points most desirable for the use intended by the individual user. The petitioner, in the early part of 1937, placed on the market a transformer attached to the top or cap of the metal box which was to contain it. The cap and metal box were circular. It was called the pivot type. The advantage of this new type of container was that only one set of brackets was necessary. The bottom part of the case could be fastened to the pole with that one set of brackets and the circular cap to which the transformer was appended could be placed on that container at any point on a circle so that the leads could come out in the way desired by the particular user. The price of the two types was the same. The petitioner sold 16,965 of the pivot type transformers during 1937. Those sales constituted about 20 per cent of its total sales for *5 that year. The transformers were sold under a guarantee for one year. The containers were filled with oil to insulate them and also to dissipate the internal heat created by the transformer. A small tube, or breather, through the cap or cover of the pivot type allowed air to go in and out to compensate for the expansion and contraction of the oil as it heated and then cooled off. It was designed to prevent water from entering the case. Excessive moisture in the oil would cause the transformer to perform poorly and to burn out. Thepetitioner soon observed that a number of the pivot type transformers were defective in some way and it finally traced the trouble to the fact that splashing rain was sucked inside the container through the breather. It decided to replace the "breathers" on all pivot type transformers with a newly designed part which would help to eliminate the trouble. It accrued the estimated cost of such replacements as an expense for 1937 in closing the books for that year. The actual expenditures were made in 1938 and 1939 and were made solely to remedy the defects caused by the faulty breather. The deduction in the amount of $115,889.43 was allowed for 1937 by a decision *6 of this tribunal. The petitioner claimed the deduction as an abnormality in computing its excess profits credit under the income method. The Commissioner held that it was not an abnormal deduction. The deduction of $115,889.43 for 1937 was of a class abnormal for the petitioner. The abnormality was not a consequence of an increase in the gross income or a decrease in the amount of any other deduction of the taxpayer in its base period and was not a consequence of a change at any time in the type, manner of operation, size, or condition of the business engaged in by the taxpayer. The stipulation is incorporated herein by this reference. Opinion MURDOCK, Judge: The respondent argues that the deduction here in question can not be separately classified from deductions for repairs and replacements for other years. The parties have stipulated the amount which the petitioner expended in each of the years 1933 through 1944 for repairs and replacements. The amounts in other years ranged from.03 per cent of gross sales to.19 per cent, whereas the expenditures here in question were 11.69 per cent of gross sales. The record also shows that the petitioner at no time before or since had *7 to make a similar expenditure, that is, one involving the correction of a structural defect in design. The respondent also suggests that this expenditure took the place of and therefore reduced the ordinary expenditure for repairs and replacements for 1937. The record shows, however, that these expenditures were not made in 1937 and did not take the place of any ordinary repairs or replacements. They were made after 1937 to replace defective breathers and the damage done thereby and for no other purpose. These were not ordinary repairs and replacements but were due to a basic defect in design of the breather. The respondent also argues that the abnormality was due to an increase in the base period gross income. The evidence shows, however, that it was in no way due to an increase in gross income but was due solely to the defective breather. Of course, if the petitioner had not been able to sell so many of the transformers on which this breather was installed, the cost of replacement would have been less. But that would be true in every case and would deprive these relief provisions of all effect. The respondent also contends that the abnormality was a consequence of a change *8 in the manner of operation or condition of the business. He argues that any change in design is a change in manner of operation of the business. A change in type, manner of operation, size, or condition of the business does not necessarily result when a new model is introduced and certainly does not result here where there was only a slight change in the design. The principal difference between the pivot type of transformer and the other type which the petitioner manufactured was in the shape of the container and the method of fastening the transformer to the container. Those changes were made in an effort to improve the convenience of fastening the transformers to poles. The change did not result in a change in the type, manner of operation, size, or condition of the business engaged in by the petitioner. This case is in many respects similar to Suface Combustion Corporation, 9 T.C. , No. 89, (10/9/47). The respondent makes no argument in support of his determination on the second issue and concedes that "It appears to be controlled by the decision of this Court in Reo Motors, Inc., (1947) 9 T.C. No. 47." We take this as an abandonment of the issue and *9 decision on that point will be entered for the petitioner. Decision will be entered under Rule 50.